JOJ:joj

FILED
2009 SEP 29 PM 4:37

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2009 Grand Jury

| UNITED STATES OF AMERICA, | ) CR 09- **CR 09 00993** |
|---|---|
| Plaintiff, | ) |
| | ) **I N D I C T M E N T** |
| v. | ) |
| | ) [18 U.S.C. § 1343: Wire Fraud; |
| CHRISTINE DANIEL, | ) 18 U.S.C. § 1341: Mail Fraud; |
|   aka Chika Chima, | ) 18 U.S.C. § 2: Aiding and |
|   aka Chika Christine Daniel, | ) Abetting and Causing an Act To |
|   aka Christine O. Daniel, | ) Be Done; 21 U.S.C. § 853, 28 |
|   aka Chika Christine Chima, | ) U.S.C. § 2461(c), 18 U.S.C. |
|   aka Christine O. Chima, | ) § 981(a)(1)(C): Criminal |
|   aka Christina Ononando     Chima, | ) Forfeiture] |
|   aka Christine Chika     Chesman, | ) |
| Defendant. | ) |

The Grand Jury charges:

COUNTS ONE AND TWO

[18 U.S.C. §§ 1343, 2]

A. <u>INTRODUCTION</u>

At all times relevant to this Indictment:

1. Defendant CHRISTINE DANIEL, also known as ("aka") Chika Chima, aka Chika C. Daniel, aka Christine O. Daniel, aka Chika Christine Chima, aka Christine O. Chima, aka Christina Ononando

Chima, aka Christine Chika Chesman (defendant "DANIEL"), was a licensed physician and surgeon in California, doing business as Sonrise Wellness Center, Inc., Sonrise Medical Clinic, Inc., Medical Treatment Options of America, Inc., and Christine Daniel M.D., Inc. (collectively referred to hereinafter as "The Sonrise Medical Facilities"). The Sonrise Medical Facilities were located at 15314 Devonshire Boulevard, Suite A, Mission Hills, California.

2. Defendant DANIEL was an ordained minister for the Pentecostal Church.

B. THE SCHEME TO DEFRAUD

2. Beginning in or about 2001, and continuing until at least October 20, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant DANIEL, together with others known and unknown to the Grand Jury, knowingly devised, participated in, and executed a scheme and artifice to defraud as to material matters, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

3. Defendant DANIEL carried out the fraudulent scheme in substance in the following manner:

a. Defendant DANIEL concocted a product that was labeled, described, and promoted under a variety of names, including "C-Extract," " the natural treatment," and " the herbal treatment" (hereinafter, "the herbal product").

b. Defendant DANIEL and employees working at her direction would falsely claim and represent that the herbal

product could cure or treat many human diseases and conditions, including cancer, multiple sclerosis, stroke, Alzheimer's Disease, Parkinson's Disease, diabetes, and hepatitis.

    c.    Defendant DANIEL and employees working at her direction would falsely claim that the lowest "level" or "strength" herbal product cured cancer 60% of the time and that the highest level product cured cancer at a rate of 80% or more.

    d.    Defendant DANIEL and employees working at her direction would falsely claim and represent that the herbal product was made of herbs from around the world.

    e.    Defendant DANIEL and employees working at her direction would falsely claim and represent that the herbal product was manufactured according to the needs of each individual patient by her in a laboratory.

    f.    Defendant DANIEL would use her status as a minister to create a bond of trust and affinity that would allow her to market, promote, and sell her herbal product throughout the Evangelical Christian community.

    g.    Defendant DANIEL would cause the herbal product to be shipped to customers located throughout the United States.

    h.    Defendant DANIEL would frequently recommend that customers travel to the Sonrise Medical Facilities from locations throughout the United States to live in local motels in order to receive daily herbal product treatments from defendant DANIEL and her employees.

    i.    Depending upon the purported level or strength of the herbal product, defendant DANIEL would charge her customers between $750 to $4,270 for approximately one week's worth of the

herbal product.

4. In truth and in fact, as defendant DANIEL then well knew, and contrary to the representations made to individuals suffering from cancer, members of their families, and others:

    a. The herbal product did not have a cancer cure rate between 60% and 80%;

    b. The herbal product was not made of herbs from around the world; and

    c. The herbal product was not manufactured by defendant DANIEL in a laboratory according to patient specifications.

C. <u>EXECUTION OF SCHEME TO DEFRAUD</u>

To carry out the fraudulent scheme, defendant DANIEL, and others known and unknown to the Grand Jury, engaged in and caused others to engage in the following fraudulent and deceptive acts, practices and devices, among others:

5. Defendant DANIEL caused the creation of the Internet website www.sonrisewellnesscenter.com. The website listed a "C-Extract" product for sale for use by cancer patients. The website stated that the C-Extract product was available in Levels I-VI with a price list that required the prospective customer to call the Sonrise Wellness Center, specifically stating, "[t]o determine the level best for you and the cost please call our office at (818) 920-2000."

6. Defendant DANIEL caused the creation of the Internet website www.freeofcancer.com to advertise and promote her Medical Treatment Options of America business. The website stated, "Cancer doesn't have to be a Death Sentence," and provided the

telephone number and address for her Sonrise Medical Facilities. The website directed visitors to schedule an appointment for initial consultation by "our Doctor," and that "M.T.O.A. recommends early appointments, as there may be a waiting period." The website offered a six month program for cancer patients and stated that payment was required in advance, there were five levels of treatment, and the cost depended on the level and intensity of care determined by the doctor.

7. On or about March 21, 2001, defendant DANIEL caused one of her employees to purchase a mortar and pestle for use in concocting the herbal product.

8. On or about April 18, 2001, April 26, 2001, and December 9, 2003, defendant DANIEL purchased 300 milliliter amber plastic bottles for use in packaging the herbal product.

9. On August 20, 2001, after being diagnosed with metastatic breast cancer, victim C.L. met with defendant DANIEL at the Sonrise Medical Facilities. Defendant DANIEL told C.L. and her sister that she had a treatment made from the finest herbs in the world that would attack the cancer and get rid of it. C.L. died in March 2002.

10. In or about October 2001, after being diagnosed with metastatic breast cancer, victim P.M. and her husband telephoned defendant DANIEL from their residence in Alabama. Defendant DANIEL told them that the basic cancer program was six months in length and that chemotherapy would do P.M. no good. Defendant DANIEL told P.M.'s husband that he needed to bring his wife to ~~the Sonrise Medical Facilities immediately. On or about October~~ 21, 2001, P.M. and her husband traveled from Alabama to meet

5

defendant DANIEL at the Sonrise Medical Facilities. Defendant DANIEL told P.M. that the herbal treatment program would shrink her tumors and kill her cancer cells. Between on or about October 22, 2001, through March 15, 2002, P.M. and her husband paid defendant DANIEL thousands of dollars via bank and cashier's checks to purchase the herbal product. Defendant DANIEL then caused the herbal product to be shipped via interstate mails to P.M. in Alabama. P.M. died in April 2002.

11. On or about December 4, 14, and 20, 2001, defendant DANIEL sold the herbal product to victim H.L.F. representing the product as a "cancer therapy."

12. On or about December 10, 2001, defendant DANIEL caused one of her employees to place an advertisement for her Medical Treatment Options of America business in a Los Angeles area newspaper under the Medical & Dental Professionals section of the paper. The advertisement stated in part, "...Do you or someone you know have CANCER, Parkinson's Disease, Alzheimer's Disease, MS, Stroke, Heart Disease .... Have you come to the end of your treatment road? Why should you die before your time?" The advertisement listed the phone number and address for defendant DANIEL's Sonrise Medical Facilities.

13. On or about December 17, 2001, after being diagnosed with metastatic breast cancer, victim B.D. traveled from Georgia to California to meet defendant DANIEL at the Sonrise Medical Facilities. Defendant DANIEL told B.D. the following:

    a. She had a cancer cure that had cured people of cancer.

    b. The cancer treatment consisted of an herbal

treatment that she had made herself in a laboratory at her residence.

  c. Each patient received a different level of the cure.

  d. The treatment would make the cancer disappear.

Between December 17, 2001, and March 10, 2002, B.D. and her family members paid defendant DANIEL thousands of dollars for the herbal product. B.D. died on March 26, 2002.

 14. On or about January 31, 2002, defendant DANIEL caused one of her employees to purchase a tablet pulverizer for use in concocting the herbal product.

 15. On or about April 1, 2002, after their daughter was diagnosed with metastatic medulloblastoma cancer, victims L.K. and R.K. met with defendant DANIEL. Defendant DANIEL sold them a product purported to cure cancer. In an undated invoice on Medical Treatment Options of America letterhead, defendant DANIEL charged L.K. and R.K. $3,237.50 per week for "Extracts," "Injection," and "Tablets/Capsules." Their daughter died on July 3, 2002.

 16. On or about September 24, 2002, defendant DANIEL caused one of her employees to order 100 "C-Extract Concentrate" labels for the herbal product.

 17. On or about December 5, 2002, defendant DANIEL promoted her herbal product during an interview on a television program broadcast throughout the United States over a prominent Evangelical Christian broadcasting network. During the interview, defendant DANIEL made the following claims and representations:

  a. "We have seen miracles."

  b. "We have seen the dead raised."

  c. "We have an array of herbs we use. We're a clinic, an Evangelical clinic. We combine prayer and herbs. We practice what we call King Hezekiah alternative medicine."

  d. "We have our own laboratory."

  e. "We make our own herbs."

  f. "We have a collection of herbs from around the world and the best areas from every nation."

  g. The herbs come in levels I-IV depending on what the patient wants.

  h. "We have people today, Stage IV-B cancers, across this nation, that are living today because of our treatment."

  i. "We have a 60% cure rate for the lowest level [herbal product] that we have."

  j. "We have people with bone metastasis, lung metastasis, metastasis to the pericardium, we have a lady from Michigan, she had a Stage IV-B spread of the breast cancer to her brain. Within two weeks, the tumor mark drop to normal."

  k. "We work with hepatitis C, we work with diabetes, [and] neuromuscular."

  l. Her herbal treatment can cure hepatitis C.

18. In the weeks following her television interview, defendant DANIEL instructed her employees what to tell customers who were calling the Sonrise Medical Facilities for the herbal product in response to defendant's broadcast claims and representations. Among other things, defendant DANIEL instructed the employees to tell customers that Level VI and VII of the

product had an 80% cure rate for cancer.

19. On or about December 5, 2002, after being diagnosed with metastatic colon cancer, victim W.P. saw defendant DANIEL's interview on the Evangelical Christian broadcast television network from her home in Kansas. On January 2003, W.P. traveled from Kansas to meet with defendant DANIEL at her Sonrise Medical Facilities. Defendant DANIEL told W.P. that her cancer medicine was made from herbs from 23 different countries and that she prepared the medicine in a lab at her residence. W.P. and her husband paid defendant DANIEL thousands of dollars via interstate credit card wires to purchase the herbal product. On or about June 21, 2004, August 11, 2004, August 26, 2004, September 9, 2004, October 4, 2004, and October 20, 2004, defendant DANIEL then caused the herbal product to be shipped via interstate mails to W.P. in Kansas. W.P. died in 2006.

20. On or about April 3, 2003, May 15, 2003, August 4, 2003, October 2, 2003, November 4, 2003, and January 8, 2004, defendant DANIEL caused one of her employees to order 1000 milliliter amber plastic bottles for use in packaging the herbal product.

21. On or about September 9, 2003, defendant DANIEL offered to sell victim J.C., who had been diagnosed with colon cancer, five bottles of "Level 4 C-Extract" herbs for $12,225 per month. On or about January 30, 2004, J.C.'s health insurance paid defendant DANIEL $10,050 for the purchase of five bottles of "C3 C-Extract" and one package of "SC Powder" by J.C.

22. On or about September 11, 2003, after being diagnosed with breast cancer, victim R.M. and her husband telephoned

defendant DANIEL from their home in Texas. On September 16, 2003, they traveled to California to meet with defendant DANIEL at the Sonrise Medical Facilities. Defendant DANIEL told them that she put together herbs from around the world, most of which she obtained from Africa via runners who brought the herbs into the United States. Defendant DANIEL referred to her herbal product as "botanical chemotherapy" and stated that her "medicine" had all the original components of chemotherapy without the bad side effects. R.M. and her husband paid defendant DANIEL thousands of dollars via interstate credit card wires to purchase the herbal product. Defendant DANIEL then caused the herbal product to by shipped via interstate mails to R.M. in Texas. R.M. is deceased.

23. On or about October 2, 2003, the daughter of victim M.A., who developed metastatic melanoma cancer while living in Africa, telephoned defendant DANIEL from her home in Minnesota after learning about defendant DANIEL's herbal treatment from a television show. Defendant DANIEL told M.A.'s daughter that her "medicine" was called "C-Extract" and that it was made by DANIEL herself from herbs obtained in Europe. The daughter and other family members paid defendant DANIEL thousands of dollars via interstate credit card wires to purchase the herbal product for M.A. Defendant DANIEL then caused the herbal product to be shipped via interstate mails to M.A. M.A. died on or about November 19, 2003.

24. On or about October 15, 2003, defendant DANIEL prepared a price list for the herbal product that listed prices ranging from $750 for a single bottle of C-1 to $3,874 for a single

bottle of C-6.

25. On or about November 5, 2003, victim D.H. met with defendant DANIEL after a referral from one of DANIEL's employees regarding D.H.'s fibroid tumors. Defendant DANIEL told D.H. that she had cures for cancer, but did not normally deal with patients that did not have cancer. Defendant DANIEL gave D.H. a price list that listed the prices for the herbal product. Defendant DANIEL told D.H. that patients that were dying of cancer were taking level C-6 with a treatment strength of 60%. D.H. paid defendant thousands of dollars via interstate credit card wires for the herbal product.

26. On or about November 26, 2003, defendant DANIEL caused one of her employees to order 500 milliliter amber plastic bottles for use in packaging the herbal product.

27. On or about December 15, 2003, defendant DANIEL updated the price list for the herbal product, increasing prices ranging from $750 for a single bottle of C-1 to $4,270 for a single bottle of C-6.

28. On or about December 17, 2003, after being diagnosed with metastatic colon cancer, victim J.M. and her husband met with defendant DANIEL at the Sonrise Medical Facilities. Defendant DANIEL told J.M. that she used natural herbs from different parts of the world to make her cancer treatment, and that these herbs had curative cancer properties. Defendant DANIEL further explained that the herbs were used to attack the growth of the cancer, reduce the size of the tumor, and to cause death of the cancer cells. J.M. and her husband paid defendant DANIEL over $100,000 for the herbal product. J.M. died on June

2, 2004.

29.  By deceiving victims into paying money based on the above misrepresentations, defendant DANIEL and employees working at her direction induced approximately 55 victims to send in excess of $1.1 million to the Sonrise Medical Facilities.

D.  USE OF THE WIRES

30.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant DANIEL, also known as ("aka") Chika Chima, aka Chika C. Daniel, aka Christine O. Daniel, aka Chika Christine Chima, aka Christine O. Chima, aka Christina Onondando Chima, aka Christine Chika Chesman, and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme to defraud, caused and aided and abetted the transmission of the following by means of wire communication in interstate commerce:

| COUNT | DATE | ITEM |
| --- | --- | --- |
| ONE | 10/4/04 | Credit card ending in 8984 transaction processed on behalf of Sonrise Wellness Center by the Fifth Third Bank processing center located in Cincinnati, Ohio, Grand Rapids, Michigan, and Florence, Kentucky, in the amount of $2,300.00 for purchase by A.P. |

| COUNT | DATE | ITEM |
|---|---|---|
| TWO | 10/20/04 | Credit card ending in 8984 transaction processed on behalf of Sonrise Wellness Center by the Fifth Third Bank processing center located in Cincinnati, Ohio, Grand Rapids, Michigan, and Florence, Kentucky, in the amount of $2,300.00 for purchase by A.P. |

COUNTS THREE AND FOUR

[18 U.S.C. §§ 1341, 2]

31. The Grand Jury hereby realleges and incorporates by reference paragraphs one through twenty-nine of the Indictment.

D. THE MAILINGS

32. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant DANIEL, also known as ("aka") Chika Chima, aka Chika C. Daniel, aka Christine O. Daniel, aka Chika Christine Chima, aka Christine O. Chima, aka Christina Ononando Chima, aka Christine Chika Chesman, and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the above-described scheme to defraud, placed and caused to be placed in an authorized depository for mail matter, and to be sent and delivered by the U.S. Postal Service, and to be deposited with and to be delivered by private and commercial interstate carriers, according to the directions thereon:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| THREE | 10/4/04 | Shipment from Sonrise Wellness Center to W.P. and A.P. in Ness City, Kansas |
| FOUR | 10/20/04 | Shipment from Sonrise Wellness Center to W.P. and A.P. in Ness City, Kansas |

COUNT FIVE

[28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C);

and 21 U.S.C. § 853]

33. The Grand Jury hereby realleges and incorporates by reference paragraphs one through thirty-two of this Indictment, as though fully set forth herein, for the purpose of alleging forfeiture pursuant to the provisions of Title 28, United States Code, Section 2461(c), Title 18, United States Code, Section 981(a)(1)(C), and Title 21, United States Code, Section 853.

34. Pursuant to Title 28, United States Code, Section 2461(c), Title 18, United States Code, Section 981(a)(1)(C), and Title 21, United States Code, Section 853, defendant CHRISTINE DANIEL, also known as ("aka") Chika Chima, aka Chika C. Daniel, aka Christine O. Daniel, aka Chika Christine Chima, aka Christine O. Chima, aka Christina Ononando Chima, aka Christine Chika Chesman (defendant "DANIEL"), if convicted of violating Title 18, United States Code, Sections 1341 and/or 1343 as charged in this Indictment, shall forfeit to the United States the following property:

    a. All right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offense(s);

    b. A sum of money equal to the total amount of proceeds derived from each offense for which defendant DANIEL is convicted.

35. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant DANIEL, if so convicted, shall forfeit

substitute property, up to the total value of the property described in paragraph 34, if, by any act or omission of the defendants, the property described in paragraph 34, or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

GEORGE S. CARDONA
Acting United States Attorney

*[signature]*

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


JOSEPH O. JOHNS
Assistant United States Attorneys
Chief, Environmental Crimes Section